L. S. MUNGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARJORIE MIDDLETON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BERTHA MUNGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21556, 21557, 21558. Promulgated June 21, 1950.

*Ben M. Davis, Esq.,* for the petitioners.
*Joseph P. Crowe, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge*: Respondent determined deficiencies in income tax for the calendar year 1944 in the following amounts:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| L. S. Munger | 21556 | $249.97 |
| Marjorie Middleton | 21557 | 443.00 |
| Bertha Munger | 21558 | 249.97 |

The proceedings were consolidated for hearing.

The questions at issue are:

(1) Was a commission paid by a partnership in which petitioners owned a one-half interest, for securing oil and gas leases on property owned by the partnership, a capital expenditure or a business expense?

(2) If the commission was a capital expenditure, is the partnership entitled to cost depletion on it over the term of the leases?

The facts were stipulated.

The petitioners are individuals, with residence at Abilene, Taylor County, Texas. Petitioner Marjorie Middleton is the daughter of petitioners L. S. Munger and Bertha Munger, who are now and were during the year in controversy husband and wife.

The returns for the year here involved were filed with the collector of internal revenue for the second district of Texas.

Petitioners are owners of a one-half interest of the partnership of Munger and Nix. This partnership owns a part of sections 19 and 20, block A–47, of the school lands located in Andrews County, Texas.

On October 27, 1944, the partnership of Munger and Nix executed 2 oil and gas leases with the Hunt Oil Co. covering 402.05 acres at $100 per acre, for a total consideration of $40,160.45. In the 1944 income tax return the above amount of $40,160.45 was included in ordinary income and statutory depletion was claimed and allowed thereon at the rate of 27½ per cent. Paragraphs 2, 3, and 4 of the leases, which were substantially similar in both leases, except that the amount of the rental under paragraph 4 was $321.60 in one lease and $80.45 in the other, read in part as follows:

2. Subject to the other provisions herein contained, this lease shall remain in force for a term of five (5) years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled.

3. The royalties to be paid by lessee are: (a) on oil, one-eighth of that produced and saved from said land, same to be delivered at the wells or to the credit of lessor in the pipe line to which the wells may be connected; lessor's interest in either case to bear its proportion of any expenses for treating the oil to make it marketable as crude; (b) on gas, one-eighth of the proceeds from the sale of the gas, as such at the well for gas from wells where gas only is found, and where not sold shall pay Fifty ($50.00) Dollars per annum as royalty from each such well * * *.

4. If operations for drilling or mining are not commenced on said land or on land pooled therewith on or before one year from this date, this lease shall terminate as to both parties, unless on or before one year from this date, lessee shall pay or tender to the lessor a rental of * * *, which shall cover the privilege of deferring commencement of such operations for a period of twelve (12) months. In like manner and upon like payments or tenders, annually, the commencement of said operations may be further deferred for successive periods of the same number of months, each during the primary term. * * *

The interest of each petitioner in the partnership of Munger and Nix is an undivided one-eighth interest owned by Marjorie Middleton and an undivided three-eighths interest owned by L. S. Munger and Bertha Munger.

A commission of $4,000 was paid by the partnership of Munger and Nix during the year 1944 for procurement and execution of the above mentioned leases. This amount was deducted in the partnership return of Munger and Nix for the year 1944 as business expense in computing distributive income. Each petitioner's share of this deduction was disallowed by respondent in the notices of deficiency.

Rentals due under paragraph 4 of the leases were paid under the terms thereof for the years 1945, 1946, 1947, and 1948. There was no production of oil and gas on these leases during the year 1944, nor was there any production of oil and gas on said leases during the term thereof.

Petitioners contend that the commission of $4,000 paid in 1944 by the partnership of Munger and Nix for securing two oil and gas

leases for the partnership as lessor was a business expense, and that they, petitioners, are entitled to deduct their proportionate share of that payment, $2,000, from their share of the partnership income in that year. Respondent has determined that the commission was a capital expenditure.

The weight of authority is that a commission paid by a lessor in securing a lease is a capital expenditure and not an ordinary and necessary business expense. *Young* v. *Commissioner* (C. C. A., 9th Cir., 1932), 59 Fed. (2d) 691, affirming 20 B. T. A. 692; certiorari denied, 287 U. S. 652; *Central Bank Block Assn.* v. *Commissioner* (C. C. A., 5th Cir., 1932), 57 Fed. (2d) 5, affirming 19 B. T. A. 1183; *Bonwit Teller & Co.* v. *Commissioner* (C. C. A., 2d Cir., 1931), 53 Fed. (2d) 381, affirming on this issue, 17 B. T. A. 1019; certiorari denied, 284 U. S. 690; *Gould-Mersereau Co.*, 21 B. T. A. 1316; petition for review dismissed, C. C. A., 2d Cir., 1932. *Contra, Daly* v. *Anderson* (Dist. Ct., S. Dist., N. Y., 1930), 37 Fed. (2d) 728; *Robert H. McNeill*, 16 B. T. A. 479. (The Board's opinion in the *Bonwit Teller* case overruled the *McNeill* case. *Daly* v. *Anderson, supra*, cited the *McNeill* case.)

Petitioners argue that the *Central Bank Block Assn.* and *Bonwit Teller* cases and "other authorities on the same question" are distinguishable in that the leases in those cases were long term, whereas the leases in the instant proceedings were "for one year or at most for five years." We see no reason to hold that a lessor does not add to his assets in obtaining a short term lease. He has acquired a contract from which income may be derived in the future, just as in obtaining a long term lease. However, even if the other decisions above cited are distinguishable on the ground that they involved long term leases, *Gould-Mersereau Co., supra*, is not. In that case the leases were for five years and the Board of Tax Appeals held that broker's commissions paid to obtain them were capital expenditures. Here the "primary term" of the leases was five years, subject to prior termination if operations for drilling and mining were not commenced within one year, unless delay rentals were paid. Delay rentals were paid in 1945, 1946, 1947, and 1948. We think it clear on these facts that these were five-year leases. On the narrow question, then, of whether a commission paid to obtain five-year leases is a capital expenditure, *Gould-Mersereau Co., supra*, is precisely in point.

But petitioners maintain that all the cases involving ordinary leases are distinguishable, for the reason that "under Texas law an oil and gas lease strictly speaking, is not a lease at all, but actually a form of conveyance of a fee simple estate in the land covered by the lease." This aspect of Texas law was considered by the Supreme Court in *Burnet* v. *Harmel*, 287 U. S. 103, and the Court there held that even if

under Texas law title to oil and gas passes to a lessee immediately on execution of an oil and gas lease, nevertheless the bonus and royalties paid to a lessor under such a lease are income of the lessor and taxable as such, and not as capital gains. See also *William D. Gray*, 13 T. C. 265, 273 (on appeal, C. A., 5th Cir.). That being so, the broker who has obtained an oil and gas lease has obtained for the lessor a contract from which he will realize income in the form of bonus and royalties, just as the lessor under an ordinary lease will realize income in the form of rents. It follows that if a commission paid by a lessor to obtain an ordinary lease is a capital expenditure, so is that paid by a lessor to obtain an oil and gas lease.

But petitioners argue that, since there was no production of oil and gas on the leases herein during the term thereof, they added nothing to their assets in obtaining the leases and that therefore the commission was not a capital expenditure. However, we think it immaterial that there was no production. A bonus of $40,160.45 was paid the partnership, in which petitioners had a one-half interest, for the leases. This bonus is considered payment in advance for oil and gas to be extracted (advance royalty) and is taxable as income to the lessor, even though no oil and gas is extracted. *Herring* v. *Commissioner*, 293 U. S. 322; *Burnet* v. *Harmel, supra*. Therefore, the partnership realized income in the form of the bonus in obtaining these leases. It follows that the commission of $4,000 paid to obtain these income-producing oil and gas leases was a capital expenditure within the rationale of the above cited cases holding that commissions paid to obtain other types of income-producing leases are capital expenditures. We accordingly hold that respondent did not err in his determination that petitioners' share of the commission, $2,000, was a capital expenditure and not a business expense in 1944.

The second question herein at issue arises from petitioners' contention that if the commission was a capital expenditure and not a business expense, then the partnership is entitled to prorate it over the term of the lease and deduct it from the income received from the lease, and that, since that income was all received in 1944, the partnership is entitled to deduct all the commission in that year. Respondent's position is that, since the partnership was allowed percentage depletion in 1944 of 27½ per cent of the bonus of $40,160.45, the gross income from the leased properties in 1944, or $11,044.12, it is not entitled to cost depletion on the capital expenditure represented by the commission.

Section 114 (b) (1), Internal Revenue Code, provides that the basis for depletion shall be the adjusted basis, normally cost, but allows certain exceptions. One of these exceptions is provided in section 114 (b) (3) of the code, which is as follows:

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

Thus a taxpayer is ordinarily entitled to depletion based either upon cost or percentage of gross income. Furthermore, Regulations 111 (1943), section 29.23 (m)–10 (d), provides that "the owner of an economic interest in oil and gas wells may take as a depletion deduction in respect of any bonus or advanced royalty from the property for the taxable year 27½ per cent of the amount thereof" in lieu of cost depletion in respect of the bonus. And in *Herring* v. *Commissioner*, *supra*, the Supreme Court held that the lessor of an oil and gas lease could compute depletion on the basis of cost, or "avail himself of the alternative method of computing deduction at a per cent of gross income," i. e., at a per cent of the bonus received for the lease, though there was no production when the leases were made or at any time within the taxable year.

Thus the lessor of an oil and gas lease who receives a bonus therefor, as the partnership did here, is theoretically entitled either to percentage depletion on the bonus, or cost depletion. "The purpose of the depletion allowance on the *cost* basis is to provide for the return to the owner of mineral deposits, whether freehold or leasehold, *the value of his property on the basic date* (plus subsequent allowable capital additions), 'but not including land values for purposes other than the extraction of minerals'." G. C. M. 14448, XIV–1 C. B. 98. But actually, as G. C. M. 14448 points out, "If, at the time of the execution of the lease, the leased premises were in an unproven area, it follows that a mineral value at the basic date can rarely, if ever, be established." In such case, the taxpayer will not be able to take cost depletion, for lack of proof of base, but will have to take percentage depletion. That may have been the reason why the partnership here took percentage depletion. But, whatever the reason for the partnership's choice, the fact remains that one method of depletion or the other must be used in 1944, not both. "The nature and the purpose of the allowance is the same in both cases." *Herring* v. *Commissioner*, *supra*. "No double deduction for depletion was ever contemplated by the statute." *Schermerhorn Oil Corporation*, 46 B. T. A. 151.

We have already determined that the commission of $4,000 was a capital expenditure. Whatever the value of the mineral properties

here, a capital expenditure made to secure a lease to produce income from and develop those properties must be considered an "allowable capital addition" (see G. C. M. 14448, *supra*) to that value. Having taken percentage depletion on the advance royalty received from the lease, the partnership and hence petitioners are not entitled to depletion on additions to the capital account of the leased properties. It follows that respondent's determinations of deficiencies must be sustained.

*Decision will be entered for the respondent.*