Harry Bourg and Louise S. Bourg v. Commissioner.
Bourg v. Commissioner
Docket No. 70785.
United States Tax Court
T.C. Memo 1961-95; 1961 Tax Ct. Memo LEXIS 250; 20 T.C.M. (CCH) 425; T.C.M. (RIA) 61095; 14 Oil & Gas Rep. 665; March 31, 1961
Clyde C. Caillouet, Esq., 102 W. 2nd St., Thibodaux, La., for the petitioners. J. C. Linge, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in the petitioners' income tax for the calendar year 1954 in the amount of $7,571.52. The issue involved is whether certain attorneys' fees and engineer's fees are deductible under *251 section 212 [1] of the Internal Revenue Code of 1954. Findings of Fact The petitioners, Harry Bourg (hereinafter referred to as Bourg) and Louise S. Bourg are husband and wife and reside at Houma, Louisiana. For the taxable year 1954, petitioners filed a joint return with the director of internal revenue at New Orleans, Louisiana. Harry Bourg v. J. J. Hebert, et al. During the period from January 10, 1928, to December 21, 1934, Bourg acquired from Charles W. Buckley (hereinafter referred to as Buckley), individually, and Charles W. Buckley, Robert Buckley and Warren Buckley, trustees of the Charles W. Buckley Trust, (hereinafter referred to as the Buckley Trust), by ten separate acts of sale, 20 separate tracts of land consisting of 8,700 acres in Terrebonne Parish, Louisiana. The land constituted *252 one contiguous tract of land with the exception of the east half of the southeast quarter of Section 9 in Township 20. With respect to each sale the vendors reserved unto themselves all oil, gas and mineral rights in the land. Prescription was accruing in favor of the petitioners and if no mineral development occurred within ten years from the dates of the purchase of the Buckley land, the mineral reservations would have had no legal effect and all oil, gas and minerals on and under the land would have become the property of petitioners under Louisiana law. As of April 3, 1937, there had been no mineral developments on the aforementioned land which would have affected the accrued prescriptive rights of Bourg in and to the minerals reserved to Buckley and the Buckley Trust. On or about April 3, 1937, Buckley, the Buckley Trust and Bourg entered into an agreement (hereinafter referred to as the Bourg-Buckley agreement) in which Bourg waived and renounced the accrued liberative prescription then running in his favor. In consideration therefor, Buckley and the Buckley Trust conveyed to Bourg one-half of all the mineral rights which they had heretofore reserved to themselves, subject *253 to the leases then in effect. The agreement further provided that the Buckleys were authorized to renew existing leases, grant extensions and execute new leases subject to specified restrictions set out in the agreement. By instrument dated September 15, 1933, Buckley granted an oil, gas and mineral lease to John P. Bech. Included in that lease was some of the land owned in fee by Bourg, to which the Buckleys had reserved the minerals. Under date of August 28, 1937, and after the execution of the Buckley-Bourg agreement, Buckley and the Buckley Trust entered into an agreement known as the Bech Lease Extension with the DeLarge Oil Company, assignee under the Bech lease, in which Buckley and the Buckley Trust granted the DeLarge Oil Company an additional 60 days in which to drill. Bourg, as owner of one-half of the minerals and some of the land covered by the Bech Lease Extension, intervened in the extension agreement. The Bech Lease Extension did not include all of the land in the original Bech Lease and covered only 3,200 acres of the Bourg land. The remainder of the Bourg land (approximately 5,500 acres) was not included in the Bech Lease Extension. With respect to the land conveyed *254 to Bourg by the Buckleys, oil or oil and gas wells were drilled as follows: (1) Buckley-Bourg Well No. 1 was commenced in February 1938 by the Fohs Oil Company in the southwest quarter of the southwest quarter of Section 77, Township 19 South, Range 17 East. This was a producing oil well and royalties were paid to the petitioner. (2) Buckley-Bourg Well No. 2 was commenced on January 1, 1944, by the Union Producing Company in Section 1, Township 20 South, Range 16 East. This was a producing well for a time and royalties were paid to the petitioner. (3) The Buckley-Bourg Well No. 3 was commenced October 6, 1947, by the Union Producing Company in Section 36, Township 19 South, Range 16 East. This well became wild and was abandoned January 29, 1948. (4) The Fitzpatrick-Vizard Well No. 1 was commenced by the Union Producing Company February 14, 1943, in Section 77, Township 19 South, Range 17 East. This was a producing well and was pooled into a unitized area under an agreement signed by the petitioner and others. The minerals reserved to Buckley and the Buckley Trust under the Bourg-Buckley agreement, through mesne conveyances became vested in Terrebonne Land Development Corporation *255 (hereinafter referred to as Terrebonne Land) prior to April 19, 1948. On April 19, 1948, Terrebonne Land, acting for itself and as agent for Bourg, granted J. J. Hebert an oil, gas and mineral lease which conveyed the northwest quarter of the northwest quarter of Section 20; the whole of Section 18; the west one-half of the west half, and the northeast quarter of the northwest quarter of Section 17, all in the Township 20 South, Range 17 East, Terrebonne Parish, Louisiana. The lease provided that one-half of the royalties were to be paid to Bourg. A lease bonus in the amount of $4,406 was paid, one-half of which was deposited to Bourg's bank account. On October 15, 1948, the petitioner filed suit against J. J. Hebert and Terrebonne Land. In his petition, the petitioner prayed for judgment as follows: WHEREFORE PETITIONER PRAYS * * * that, after due proceedings had, there be judgment herein in favor of petitioner and against said defendants decreeing and adjudging your petitioner to be the sole and only owner of all of the property described in Paragraph 1. of this petition, together with all oil, gas and other minerals thereunder, free from any claim whatever on the part of said *256 Terrebonne Land Development Corporation and said J. J. Hebert. PETITIONER FURTHER PRAYS that the court do maintain the liberative prescription of ten years of non-use which petitioner has hereinabove expressly pleaded, and do further decree that Terrebonne Land Development Corporation owns no mineral interest whatever in and to any of the property described in Paragraph 1. of this petition; PETITIONER FURTHER PRAYS that he be permitted to deposit the aforesaid sum of $2,203.00 in the registry of this court and that, after due proceedings had, the court do adjudge and decree the said J. J. Hebert to be the owner of said sum of $2,203.00 and do order same delivered unto him without interest thereon, and that the court do decree the aforesaid mineral lease unto said J. J. Hebert, as Lessee, to be absolutely null, void and of no effect whatever. In its answer to Bourg's suit, Terrebonne Land contended that Bourg had not acquired, by prescription, the mineral rights retained by Buckley and the Buckley Trust under the Bourg-Buckley agreement, since oil wells had been drilled on specified tracts of land which Bourg had acquired from Buckley and the Buckley Trust. Terrebonne Land prayed *257 for judgment as follows: WHEREFORE, petitioner prays that after all legal delays and due proceedings had, there be judgment, (1) Dismissing plaintiff's suit at his cost, and recognizing your respondent as the owner of an undivided half of all of the minerals lying on, under, and across the property described in plaintiff's petition; and (2) That a declaratory judgment be rendered, decreeing that the drilling and production on the land described in the Bourg-Buckley agreement, as set forth herein, interrupted the running of the liberative prescription of ten years, and that respondent and plaintiff in reconvention is the owner of an undivided one-half (1/2) of all of the oil, gas, sulphur and other minerals lying on, under, and across the property fully described in Article 14 thereof, and also described in the Bourg-Buckley agreement referred to in this petition. In the case of Harry Bourg v. J. J. Hebert, et al., the parties made the following stipulation: That aside from the mineral ownership of the property described in plaintiff's petition, this suit is also to decide on the same stipulation and facts the mineral ownership of all of the property involved in the "BOURG-BUCKLEY *258 AGREEMENT" under the declaratory judgment prayed for in the answer filed by the Terrebonne Land Development Corporation. The case was tried and the judgment of the trial court was as follows: (a) That Terrebonne Land Development Corporation was without authority to grant a lease to J. J. Hebert; and (b) That Terrebonne Land was the owner of one-half of the mineral rights in all the land conveyed to the petitioner by the Buckleys, referred to previously, except the one non-contiguous tract of 80 acres in Section 9, Township 20 South, Range 16 East. The decision of the trial court was appealed to the Supreme Court of Louisiana. In his brief filed with the Supreme Court of Louisiana, Bourg made the following statement at p. 1: That the matter in controversy, involving title to one-half (1/2) of the minerals in, on and underlying eight thousand, seven hundred (8,700) acres of land situated in Terrebonne Parish, Louisiana, exceeds the value of Two Thousand and no/100 ($2,000.00) Dollars, exclusive of interest and costs. * * * The issues involved in the appeal of Harry Bourg v. J. J. Hebert, et al., to the Supreme Court of Louisiana, as stated by that court, were as follows: *259 In this appeal this court has before it for determination the question of the ownership of one-half of the minerals in a tract of approximately 8700 acres in Terrebonne Parish, Louisiana, claimed by both the plaintiff Harry Bourg and the defendant Terrebonne Land Development Corporation, and also the question of whether this defendant had authority as an agent of plaintiff Bourg to execute a lease made to the defendant J. J. Hebert on April 19, 1948, covering 881.20 acres of the tract. The Supreme Court of Louisiana held that, with respect to the land acquired by the petitioner from the Buckleys, the petitioner had acquired by prescription one-half of the mineral rights, which were retained by the Buckleys under the agreement filed June 25, 1937, except for the tracts of land on which wells had been drilled and also held that Terrebonne Land Development Corporation was without authority to execute a lease to J. J. Hebert as agent for the petitioner. On January 11, 1954, petitioners paid to Caillouet & Falgout the sum of $3,500, and on February 15, 1954, petitioners paid to Robert Butler, Jr., the sum of $1,000 for legal services rendered; in the case of Harry Bourg v. J. J. Hebert, *260 et al., which was an appeal from the Seventeenth Judicial District Court, Parish of Terrebonne, Louisiana. These attorneys' fees were paid for the purpose of perfecting title to property. Harry Bourg v. Union Producing Company, et al. In 1954 Bourg filed suit against Union Producing Company (hereinafter referred to as Union Producing) and Texas Gulf Producing Company (hereinafter referred to as Texas Gulf) wherein he contended that the defendants, as mesne assignees of the Bech Lease, owned no interest in certain properties, all of which Bourg acquired from Buckley and the Buckley Trust and all of which was leased to John P. Bech by Buckley. In his petition, Bourg made the following allegations and prayed for judgment as follows: 15. That since it has been declared by the decision of the State Supreme Court that the Lessor and/or Lessors in the Bech Lease and Bech Lease Estension, [Extension] their heirs and assigns, no longer own the minerals affecting the property described in Paragraph 1 of this petition, it necessarily follows that the Union Producing Company and the Texas Gulf Producing Company, present owners of said lease, are also without rights under the said Bech *261 Lease Extension insofar as it purports to effect the properties described in Paragraph 1 of this petition. 16. That your petitioner has made amicable demand upon Union Producing Company and Texas Gulf Producing Company to cancel said Bech Lease Extension from the Conveyance Records of the Parish of Terrebonne, Louisiana, in so far as it purports to effect the properties described in Paragraph 1 of this petition but to no avail. * * *
WHEREFORE, petitioner prays that * * * after due proceedings had, there be judgment herein in favor of your petitioner and against said defendants, decreeing and adjudging the defendants to be without interest in the properties described in Paragraph 1 of this petition and that the said Bech Lease and Bech Lease Extension in so far as they purport to affect the properties described in Paragraph 1 of this petition be declared absolutely null, void and of no effect whatsoever. On June 15, 1954, petitioners paid to Caillouet & Falgout the sum of $500 and on October 7, 1954, petitioners paid to Caillouet the sum of $1,650 or a total of $2,150 as legal fees in connection with the filing of a suit in behalf of petitioner against Union Producing *262 and Texas Gulf. The attorneys' fees paid in connection with this case were for the purpose of perfecting title to property. Superior Oil Company Lease and Engineer's Fee On February 27, 1954, Bourg granted an oil, gas and mineral lease to the Superior Oil Company (hereinafter referred to as Superior Oil) for a primary term of five years. The lease provided, however, that it would terminate in one year unless Superior Oil commenced drilling operations or paid delay rentals. Substantially all of the land leased was acquired from Buckley and the Buckley Trust. Superior Oil paid Bourg a lease bonus in the amount of $139,820.78. This lease was formulated in the office of Caillouet & Falgout, with Bourg dictating all of the terms therein contained. This lease was drawn especially for Bourg, and contained provisions which are not ordinarily contained in an oil, gas and mineral lease, and for these services Bourg paid to the firm of Caillouet & Falgout the sum of $2,500. The attorneys' fee for drawing up this lease was the cost of acquiring the lease. T. Baker Smith (hereinafter referred to as Smith), a civil engineer, was employed by Bourg to determine the exact acreage involved in *263 the lease to Superior Oil. For this service Bourg paid Smith $200. This fee was a cost of acquiring the lease and as such was a capital expenditure. Fee for General Services On September 24, 1954, Bourg paid Caillouet & Falgout $350 for general services in connection with the overall administrative problems of Bourg's lands located in Terrebonne Parish, Louisiana. This fee was incurred for the management, conservation or maintenance of property held for production of income. Opinion The question for decision is whether certain attorneys' fees and engineer's fees are deductible as ordinary and necessary expense paid or incurred for the management, conservation or maintenance of property held for the production of income. [2] For convenience, each fee is discussed separately below. Harry Bourg v. J. J. Hebert, et al. Petitioner contends that the sole issue in Harry Bourg v. J. J. Hebert, et al., was whether or not the Buckley-Bourg agreement had the effect of changing the admitted twenty servitudes into one servitude. He contends that the fees paid in the suit were not directly and proximately related to the acquisition by him of the remaining *264 one-half mineral interest in the lands which he owned in fee, the remaining mineral interest being acquired by the operation of Louisiana law. Petitioner contends that his suit was only to void a lease and as an incidental measure he was forced to allege ownership of the land involved in the Hebert lease. Petitioner contends he was forced to file this suit for the management, conservation and maintenance of his property which was held for the production of income. It is respondent's contention that the attorney's fees are not deductible under section 212(2) because they were paid for the purpose of establishing or defending title to mineral rights, and hence a capital expenditure. We agree with the respondent. Consistently since 1916 the Treasury Regulations have provided that the cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. Congressional approval of this interpretation by reenactment of the applicable revenue statutes in successive acts in identical language gives to the regulation the efficacy of law. Judicial construction of the statute likewise has been in harmony with the regulation to the *265 effect that all sums expended toward the acquisition, protection, or preservation of title to property from or by means of which income is intended to be produced are capital expenditures. Jones' Estate v. Commissioner, 127 F. 2d 231, 232 (C.A. 5, 1942). Cf. Sec. 1.212-1.(k), Income Tax Regulations. The suit which Bourg filed against J. J. Hebert, et al., was a suit to perfect title to property and the cost of doing so was a capital expenditure. Bourg's contention that this action was only to void a lease, pointing out that immediately following the decision of the Supreme Court of Louisiana, he was able to manage his property free from claims of others, and was successful in acquiring a lease from Superior Oil is a clear indication that this was only an action to perfect title to the minerals. See Estate of Thomas E. Arnett, 31 T.C. 320 (1958). In fact, the parties to the action stipulated that the proceeding was to decide the mineral ownership of the Bourg lands. It seems inescapable that the very reason Bourg filed suit was to free the title of the minerals from the claims of others. Of course, when property is held for the production of income, any expenditure *266 which relates to the perfection or defense of taxpayer's title to the property can, in one sense, be said to have been an expenditure for the conservation of the property. However, such expenditure is more properly an element in the cost of acquiring or preserving the legal right to the income produced by the property, and, therefore, must be considered a capital expenditure. Brown v. Commissioner, 215 F. 2d 697 (C.A. 5, 1954). Harry Bourg v. Union Producing Company, et al. With respect to his suit against Union Producing and Texas Gulf in which he alleged that the lessee had forfeited its rights to certain lands involved in the "Bech" lease as extended, petitioner contends that the cost ($2,150) of pursuing this suit was a loss incident to the default of the lessee, and as such is an ordinary and necessary business expense, and a proper item of deduction. Respondent contends the legal fees paid by Bourg was for the purpose of perfecting title and acquiring an additional interest in the property, and as such were capital expenditures and should not be allowed as a deduction. We agree with respondent that the attorneys' fees were capital expenditures. In his suit *267 against Union Producing and Texas Gulf, Bourg sought to cancel a lease insofar as it affected his land. This was no more than an action to quiet or perfect title to property. Attorneys' fees paid to quiet or perfect title to property are not deductible. Cf. section 1.212-1.(k), Income Tax Regs.; Jones' Estate v. Commissioner, supra; Estate of Thomas E. Arnett, supra.
Superior Oil Company Lease and Engineer's Fee The Superior Oil Lease was granted February 27, 1954, a few days after the decision of the Supreme Court of Louisiana in Harry Bourg v. J. J. Hebert, et al., became final. Bourg received as a bonus the sum of $139,820.78. Petitioner contends that the cost of acquiring this unusually large bonus was $2,500, that is, the legal fee paid to the firm of Caillouet & Falgout, and the $200 fee paid to T. Baker Smith for engineering services (surveying the land). Petitioner points out that the lease provided that the same would be at an end in 12 months, unless a stated rental were paid, or drilling operations were conducted under the lease. Bourg contends he had no guarantee that he would receive any rental 12 months after the granting of the lease. Petitioner *268 contends he did not buy anything, that he did not pay a consideration, and that he merely agreed to let Superior Oil search for minerals, for which privilege Superior Oil paid him. He contends that he granted Superior Oil a right which produced a considerable income. It is petitioner's contention that the fee of $2,500 paid for the cost of preparing the lease and the $200 engineer's fee were ordinary and necessary business expenses, and a proper item of deduction. Respondent contends these fees were capital expenditures and not deductible. We agree with the respondent. The weight of authority is that a commission paid by a lessor in securing a lease is a capital expenditure and not an ordinary and necessary business expense. Young v. Commissioner, 59 F. 2d 691 (C.A. 9, 1932), affirming 20 B.T.A. 692 (1930), certiorari denied, 287 U.S. 652 (1932); Central Bank Block Ass'n. v. Commissioner, 57 F. 2d 5 (C.A. 5, 1932), affirming 19 B.T.A. 1183 (1930); Bonwit Teller & Co. v. Commissioner, 53 F. 2d 381 (C.A. 2, 1931), affirming on this issue, 17 B.T.A. 1019 (1929), certiorari denied, 284 U.S. 690 (1932); *269 Gould-Mersereau Co., 21 B.T.A. 1316 (1931); L. S. Munger, 14 T.C. 1236 (1950). We are unable to find any significant distinction between commissions paid to acquire a lease and attorneys' fees paid to draw it up or engineer's fees paid to survey the land in connection with the lease acquisition. Petitioner's argument that he had no guarantee that he would receive any rental 12 months after the granting of the lease has no merit. He has acquired a contract from which income may be derived in the future. L. S. Munger, supra, at p. 1238. Fee for General Services Petitioner contends that the $350 he paid for a series of conferences held in the office of Caillouet & Falgout relating to problems dealing with the administration of his 8,700 acres of land located in Terrebonne Parish, Louisiana, are deductible under section 212(2). Respondent contends that petitioner has not carried his burden of proof because he has failed to show the purpose for which the fee was paid. We agree with the petitioner that the attorneys' fee in this instance is deductible under section 212(2). Clyde C. Caillouet testified that the fee was paid for conferences *270 relating to the administration of Bourg's lands. Caillouet admitted that some of the discussions could have touched on the lawsuit Bourg filed against Union Producing; however, he stated that it definitely did not concern any work on the Superior Oil Lease. Caillouet also pointed out that though some of the time involved in the conferences may have been used to discuss certain portions of the Union Producing case, it was not for that main purpose for which the fee was charged. While the matter is not altogether free from doubt, we think the petitioner has sustained his burden of proof and is entitled to deduct this particular fee. Decision will be entered under Rule 50. Footnotes
1. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
2. Sec. 212(2)↩, supra.