VINCENT T. LARSEN AND JUNE LARSEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LANGDON G. WILLIAMS AND JOYCE WILLIAMS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5847-74, 5942-74.    Filed June 16, 1976.

*Myles J. Thomas,* for the petitioners.
*James L. Norris,* for the respondent.

OPINION

HALL, *Judge:* Respondent determined the following income tax deficiencies for petitioners in the following years:

| Petitioner | Year | Deficiency |
|---|---|---|
| Larsen _____ | 1968 | $12,144.91 |
|  | 1969 | 4,490.55 |
|  | 1970 | 4,399.76 |
| Williams _____ | 1968 | 12,301.35 |
|  | 1969 | 5,862.83 |
|  | 1970 | 3,137.89 |

These consolidated cases were submitted fully stipulated under Rule 122. Concessions having been made by the parties, the sole issue remaining is whether expenses incurred in connection with unsuccessful attempts to acquire oil and gas leases are deductible or instead must be capitalized as part of the cost of other oil and gas leases obtained in the same general leasing operation.

Petitioners Vincent T. and June Larsen were husband and wife during the years in issue, but were divorced at the time they filed their petition. June Larsen resided in Billings, Mont., when the petition was filed, and Vincent and respondent have stipulated, in accordance with section 7482(b)(2),[1] that appeal will be to the United States Court of Appeals for the Ninth Circuit.

Petitioners Langdon G. and Joyce Williams resided in Billings, Mont., when they filed their petition. June Larsen and Joyce Williams are parties solely because they filed joint returns with their husbands, and Vincent Larsen and Langdon Williams will hereinafter be referred to as petitioners or as Larsen and Williams.

Larsen and Williams are geologists. During the years in issue they were involved in the acquisition and disposition of oil and gas leases in two projects hereinafter referred to as the Cannon Ball River project and the Hannover project.

Larsen and Williams, relying on geological information available to them, were able to interest two oil and gas brokers, J. O. Norsworthy and J. W. Reger, in associating with them for the purposes of acquiring oil and gas leases covering a substantial area. They planned thereafter to assign the leases to others for cash in excess of the cost of the leases plus retaining an overriding royalty interest.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the years at issue.

During 1968 Larsen and Williams located an area, predominantly in Grant County, N. Dak., along the Cannon Ball River, hereinafter referred to as the Cannon Ball River project, which they concluded might be developed into a possible oil and gas leasing project. As originally contemplated, the Cannon Ball River project involved 775,000 acres, 175,000 of which were owned by the Northern Pacific Railroad. In 1968, Larsen, Williams, J. O. Norsworthy, and J. W. Reger (Larsen & Williams) attempted to acquire oil and gas leases on 600,000 acres (all of the 775,000 acres except for the 175,000 owned by the Railroad). Larsen & Williams succeeded in acquiring approximately 125,000 acres checkerboarded throughout the project by the end of 1970. These leases were assigned by Larsen & Williams to Helmerick & Payne, Inc., for cash plus the retention by Larsen & Williams of an overriding royalty interest.

To acquire the oil and gas leases in the Cannon Ball River project, Larsen & Williams hired landmen who determined the owners of the minerals in the area and contacted them. Larsen & Williams incurred the following expenses (primarily for landmen) in acquiring some leases and in unsuccessfully attempting to acquire other leases in the Cannon Ball River project:

|  | 1968 | 1969 |
|---|---|---|
| Recording costs | [2] $2,650.25 | [2] $887.00 |
| Bank charges | 663.41 | 948.81 |
| Office expense | 112.46 | 2,529.30 |
| Notary and title | 10,083.67 | 1,604.15 |
| Commissions paid | [3] 24,904.12 | 6,667.50 |
| Travel expense | 6,270.12 | 5,451.37 |
| Filing fees | 0 | 150.00 |
| Rentals | 0 | [4] 19,833.03 |
| Total | 44,684.03 | 38,071.26 |

"Commissions paid" (except for $5,000 paid to a Mr. Goodell) were fees paid to landmen on a daily charge basis and were payable whether or not the landmen's services resulted in acquisition of oil and gas leases. Through the efforts of the landmen, Larsen & Williams were able to obtain oil and gas

[2] Petitioners agree that these recording costs should be capitalized pro rata among the four participants.

[3] This figure includes $5,000 paid to a Mr. Goodell as a bonus for a lease acquired, which petitioners agree should be capitalized pro rata among the four participants.

[4] Respondent agrees that these are delayed rental payments deductible in 1969.

leases covering approximately 125,000 acres within the Cannon Ball River project.

"Notary and title" included title fees paid to title companies to determine the owners of the mineral interests in the Cannon Ball River project, including the owners from whom Larsen & Williams were unable to obtain oil and gas leases.

Petitioners Larsen and Williams were also involved in an oil venture in Oliver County, N. Dak., known as the Hannover project. The petitioners, who were associated with two other oil and gas brokers (not Norsworthy and Reger), originally contemplated acquiring oil and gas leases on 160,000 acres. During 1968 each petitioner's share of expenses paid (primarily for landmen) in acquiring leases and in unsuccessfully trying to acquire other leases in the Hannover project was $6,350.58.

Petitioners contend that they are entitled to a loss deduction or a business expense deduction for expenses incurred in unsuccessful attempts to acquire oil and gas leases. Respondent asserts that such expenses are capital expenses which must be added to the bases of oil and gas leases which were acquired. We hold that the expenses incurred attributable to the unsuccessful attempts to acquire leases are deductible under section 165(a) and (c) as losses incurred in a transaction entered into for profit. We therefore do not reach petitioners' alternative argument for a business expense deduction.

The parties agree that the expenses of acquiring specific oil and gas leases are capital expenses which are added to the cost bases of the leases acquired. *Seletha O. Thompson,* 9 B.T.A. 1342 (1928); see *Dorothy Cockburn,* 16 T.C. 775 (1951); *L. S. Munger,* 14 T.C. 1236 (1950). See also Rev. Rul. 67-141, 1967-1 C.B. 153, which states the respondent's position that fees paid for services in connection with the acquisition of noncompetitive Government oil and gas leases must be capitalized.

The parties also agree that where expenses are incurred in an unsuccessful attempt to acquire an oil and gas lease, the expenses are deductible as a loss. Sec. 165(a) and (c). See *Harris W. Seed,* 52 T.C. 880 (1969); *Warner Mountain Lumber Co.,* 9 T.C. 1171, 1175 (1947); *Finch v. United States,* an unreported case (D. Minn. 1966, 18 AFTR 2d 5259, 66-2 USTC par. 9542). The respondent has so stated in Rev. Rul. 71-191, 1971-1 C.B. 77.[5]

---

[5] This ruling holds that fees paid by an individual for services rendered in connection with the attempted acquisition of noncompetitive Government oil and gas leases are

See also I.T. 4006, 1950-1 C.B. 48.

The issue in these cases, then, is a narrow one: Where expenses are incurred both for successful and unsuccessful attempts to acquire oil and gas leases in the same area, must all the expenses be capitalized and added to the bases of the leases acquired, or may petitioners deduct as a loss those expenses attributable to the unsuccessful attempts to acquire leases, and capitalize only those expenses incurred in connection with leases actually acquired? We are cited no authority directly in point, but we hold for petitioners.

Petitioners argue that each lease or attempted lease is a separate property, as that term is defined in section 614 [6] and section 1.614-1(a), Income Tax Regs.,[7] that the expenses incurred in successfully acquiring each separate property are properly capitalized and added to the basis of that property, and that the expenses of attempting and failing to acquire each separate property are deductible losses. We do not, however, see any purpose borrowing here from the technical aggregation rules governing the depletion allowance. Expenses incurred in unsuccessfully attempting to lease specific acreage from a specific landowner constitutes a loss, in our opinion, regardless of whether

---

deductible as a loss under sec. 165(a) and (c) where no leases are acquired. Rev. Rul. 67-141, 1967-1 C.B. 153, is distinguished.

[6] Sec. 614(a) provides:

(a) GENERAL RULE.—For the purpose of computing the depletion allowance in the case of mines, wells, and other natural deposits, the term "property" means each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land.

[7] Regulations sec. 1.614-1(a) provides in pertinent part:

(1) For purposes of subtitle A of the Code, in the case of mines, wells, and other natural deposits, the term "property" means each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land.

(2) The term "interest" means an economic interest in a mineral deposit. See paragraph (b) of §1.611-1. The term includes working or operating interests, royalties, overriding royalties, net profits interests, and, to the extent not treated as loans under section 636, production payments.

(3) The term "tract or parcel of land" is merely descriptive of the physical scope of the land to which the taxpayer's interest relates. It is not descriptive of the nature of his rights or interests in the land. All contiguous areas (even though separately described) included in a single conveyance or grant or in separate conveyances or grants at the same time from the same owner constitute a single separate tract or parcel of land. Areas included in separate conveyances or grants (whether or not at the same time) from separate owners are separate tracts or parcels of land even though the areas described may be contiguous. If the taxpayer's rights or interests within the same tract or parcel of land are dissimilar, then each such dissimilar interest constitutes a separate property. If the taxpayer's rights or interests (whether or not dissimilar) within the same tract or parcel of land relate to more than one separate mineral deposit, then his interest with respect to each such separate deposit is a separate property.

the acreage would or would not qualify as a separate "property" under section 614(a).

Respondent asserts that if petitioners' position were adopted by this Court, then in any transaction, lease or sale, where a taxpayer hires a third party to find property to lease or to find a purchaser for the sale of property, and the third party contacts more than one potential lessor or purchaser, the taxpayer would be entitled to expense a portion of the commissions paid to the third party, and such a result would present an administrative impossibility. No such result follows from our holding herein. Costs of sale of a parcel include costs of unsuccessful contacts, just as costs of a lease include costs of initially fruitless bargaining. Costs neither of sale nor lease include costs allocable to selling or leasing other nearby properties.

There is no logic in the respondent's position that if you seek one lease and don't get it, you can deduct your expenses under section 165 (Rev. Rul. 71-191, *supra*), but if you seek two leases and obtain only one, you cannot deduct the expenses connected with the lease you didn't get but must add them to the expenses of the lease you did get. We conclude that petitioners are entitled to deduct the expenses attributable to the leases they sought but failed to get. Each lease sought was a separate and severable transaction covering specific acreage, entered into or sought to be entered into between petitioners and the owner of such acreage. If expenses are incurred with respect to one parcel and no lease is obtained, the loss is just as real regardless of whether petitioners were or were not more successful in obtaining leases on nearby acreage.

The next problem is to determine the amount of those allowable expenses. Petitioners attempted to lease all 600,000 acres in the Cannon Ball River project and all 160,000 acres in the Hannover project. Petitioners acquired only 125,000 acres in the Cannon Ball River project and alleged (but failed to stipulate) that they acquired 70,000 acres in the Hannover project.

The records are such that it is not possible to establish the exact dollar amounts of the expenses attributable to the leases petitioners acquired. Petitioners therefore propose that the expenses to be deducted be allocated in the proportion that the acres petitioners were unable to acquire bear to the total acres; i.e., 475,000/600,000 times expenses incurred in the case of the

Cannon Ball River project and 90,000/160,000 times expenses incurred in the case of the Hannover project. We do not consider this to be necessarily the best method of allocation, because, for example, it may well be that the costs of successfully leasing a parcel may substantially exceed those of unsuccessfully leasing one. However, respondent makes no issue of petitioners' allocation method, and in the absence of any further evidence, we find this to be a reasonable approach to the allocation under the circumstances, subject to proof of the acres acquired in Hannover. The expenses referred to in the case of the Cannon Ball River project are bank charges, office expense, notary and title, commissions paid (except $5,000 paid Goodell), travel expense, and filing fees, and in the case of the Hannover project, the expenses were $6,350.58 for each petitioner. The petitioners will be permitted to present proof of the number of acres acquired in the Hannover project in connection with the Rule 155 hearing.

*Decisions will be entered under Rule 155.*