JENE L. AMADORI AND ESTHER AMADORI, ET AL, [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Amadori v. Commissioner
Docket Nos. 7921-78, 7922-78, 7986-78.
United States Tax Court
T.C. Memo 1984-404; 1984 Tax Ct. Memo LEXIS 265; 48 T.C.M. (CCH) 726; T.C.M. (RIA) 84404; August 1, 1984. Jene L. Amadori and Esther Amadori. William M. Gross and Joan R. Domike, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: These consolidated cases were assigned to Special Trial Judge Peter J. Panuthos for the purpose of considering and ruling on respondent's Motion for Summary Judgment pursuant to Delegation Order No. 8 of this Court, 81 T.C. XXV (1983). The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: These *266 consolidated cases are before the Court on respondent's Motion for Summary Judgment, filed on March 1, 1984, pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2]
Respondent determined deficiencies in petitioners' Federal income tax as follows: Petitioners
Docket No.
Year
Deficiency
Jene L. Amadori and
Esther Amadori
7921-78
1974
$50,824.00
Robert and Barbara Amadori
7922-78
1974
$51,033.00
Joseph A. Amadori and
Beverly Amadori
7986-78
1974
$50,844.00
Jene L. and Esther Amadori; Robert and Barbara Amadori; and Joseph A. and Beverly Amadori, are husband and wife, respectively. Petitioners in each docket filed a joint Federal income tax return for the taxable year 1974 claiming a deduction in the amount of $101,640 which represented the aggregate of each husband's claimed deduction of $65,340 and their respective wives' deduction of $36,300 for fees paid to Gretchen Capital, Ltd. (Gretchen). For convenience purposes we will hereinafter refer to each married couple by reference to the husband's first name. Gretchen, through its Federal *267 Oil Land Acquisition Program (FOLAP), is engaged in the business of procuring noncompetitive Federal oil and gas leases on behalf of its clients. The deficiency stems from the disallowance of the deduction for the $101,610 fee paid by each of the petitioners during 1974 to Gretchen to participate in the program. The only issue for decision is whether petitioners' claimed deductions for fees paid to Gretchen to participate in FOLAP are deductible expenses under section 212(1) or (2) or section 165. [3]
Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Jene, Robert, and Joseph resided in Lackawanna, Buffalo, and Angola, New York, respectively, at the time they filed their petitions herein. Each timely filed their joint Federal income tax returns for the calendar year 1974. The petitioners are cash method taxpayers. On November 7, 1974, all six petitioners entered into a separate "advisory and service agreement" with Gretchen. [4] Each of the contracts *268 with respect to the husbands are identical. Gretchen was to provide services to obtain noncompetitive Federal oil and gas leases; Gretchen was to provide advisory services and file approximately 720 oil and gas lease bid filings per annum pursuant to the Gretchen Capital Ltd. Federal Oil Land Acquisition Program; the client agreed to pay Gretchen by December 15, 1974 the nonrefundable sum of $65,340 per annum during the period of the retainer for its services rendered; the term of the agreement was to be for 1 year terminating on October 31, 1975. Each of the contracts entered into by the wives were identical in every respect to the contracts entered into by the husbands, except that Gretchen would file 400 applications and the wives would pay $36,300. In addition, each of the petitioners purchased a "put option", or a right to sell part of their interest in the leases back to Gretchen. The husbands payed $2,260 and the wives paid $1,200 for the options. Under this "option" the husbands and wives could sell back to Gretchen an undivided one-third interest in all the leases they acquired pursuant to the program Gretchen offered them at the price of $45,000 and $25,000, respectively. *269 Respondent concedes for purposes of this motion that some applications for oil and gas leases were filed on petitioners' behalf prior to December 31, 1974.[5]
Under the terms of the advisory and service agreement, Gretchen agreed to select and file applications on numerous unspecified leases on behalf of petitioners for the fees as detailed above. These services were to be performed by Gretchen, or by Stewart Capital Corporation, to which it subcontracted some of its work. In his motion for summary judgment, respondent relies on this Court's recent decision in Nicolazzi v. Commissioner,79 T.C. 107 (1982), affd 722 F.2d 324 (6th Cir. 1983). Petitioners, in their respective responses to respondent's requests for admissions and in their memorandum in opposition to respondent's motion for summary *270 judgment, concede that this Court's decision in Nicolazzi v. Commissioner,supra, involves identical legal issues. Petitioners request this Court to reconsider its holding in Nicolazzi v. Commissioner,supra, that the advisory and service agreement fees paid are not deductible pro rata under section 165 or section 212. Petitioners urge this Court to find that the facts in the present case are controlled by the result in Larsen v. Commissioner,66 T.C. 478 (1976). In Nicolazzi v. Commissioner,supra, this Court held, on facts that are virtually identical with the facts in the instant case, that expenses paid, pursuant to an advisory and service agreement, to a corporation in the business of trying to obtain oil and gas leases on Federal land through a bidding procedure with the Bureau of Land Management were not currently deductible by taxpayer. Rather such payments represented an investment in the offering company's program that had to be capitalized and attributed to those leases which taxpayer, through the program, successfully won in the bidding process. This result follows logically from *271 the conclusion that taxpayer was investing in a program offered by the corporation which in turn did all of the work related to acquiring the leases involved, rather than directly in the individual leases themselves. Petitioners in the present case relied on Gretchen's expertise and invested in Gretchen's FOLAP program. [6]
This Court in Nicolazzi v. Commissioner,supra, held that section 212 did not apply to the factual situation presented and distinguished the section 212 deduction available in "investment counsel" situations. See Honodel v. Commissioner,76 T.C. 351 (1981). In Nicolazzi v. Commissioner,supra, we found that the taxpayer was buying neither "investment advice" nor "clerical and administrative services." Petitioners here, as in Nicolazzi v. Commissioner,supra, did not engage Gretchen *272 to provide advice regarding the management, disposition or conservation of any pre-existing property interest held for the production of income. Yet the case law and regulations make it clear that such advice is a prerequisite for the claimed deduction. Nicolazzi v. Commissioner,supra at 123, citing Contini v. Commissioner,76 T.C. 447, 452 (1981). Rather taxpayers in that case, as well as petitioners herein, were "* * * completely divorced from the selection process; * * * simply paid [their] money and waited on the sidelines for the results of the monthly lotteries to come in. * * *." Nicolazzi v. Commissioner,supra, at 128. Petitioners in the present case present a factual pattern that falls squarely within our holding in Nicolazzi v. Commissioner,supra.Accordingly, no deduction is available under section 212. Similarly no deduction is available under section 165. As in Nicolazzi v. Commissioner,supra, the investment vehicle, here Grethchen's FOLAP, must be viewed as an integrated program designed to obtain one or more leases. Looking to the substance of the transaction, *273 rather than the form, we conclude that petitioners invested in FOLAP, not individual leases. Thus, gain or loss must be determined based on the overall performance of the program, not on individual lease applications. In Larsen v. Commissioner,supra, a significantly different factual pattern is presented. [7] In Larsen, taxpayers, both geologists, were able to rely on information available to them to convince two additional people in associating with them for the purposes of directly acquiring gas and oil leases. Taxpayers located an area themselves which they concluded might be developed into a possible oil and gas leasing project. In order to acquire the oil and gas leases, taxpayers in that case hired landmen [8] who determined the owners of the minerals in the area and contacted them for taxpayers, who in turn incurred expenses in direct relation to services provided to them by the landmen. The landmen were paid fees on a daily charge basis and were payable whether or not their services resulted in the acquisition of oil and gas leases. Through the efforts of the landmen, taxpayers in Larsen v. Commissioner,supra, were able to *274 obtain oil and gas leases covering a substantial number of acres. This Court held under the facts presented that "* * * Each lease sought was a separate and severable transaction covering specific acreage, entered into or sought to be entered into between [the taxpayers] and the owner of such acreage. * * *." Larsen v. Commissioner,supra, at 483. In those circumstances where expenses are incurred both for successful and unsuccessful attempts to acquire oil and gas leases in the same area, taxpayers may deduct as a loss those expenses attributable to the unsuccessful attempts to acquire leases, and capitalize only those expenses incurred in connection with leases actually acquired. Larsen v. Commissioner,supra.
The distinction is clear. In Nicolazzi v. Commissioner,supra, taxpayers were investing in a program offered by a corporation. The corporation in turn would perform various *275 services for taxpayers and try to make possible a return on their investment. In Larsen v. Commissioner,supra, however, taxpayers themselves were directly involved in the business of acquiring, or attempting to acquire, particular oil and gas leases, and their costs were attributable to specific leases. We think that this distinction is significant. Petitioners in the instant case, as taxpayers in Nicolazzi v. Commissioner,supra, could through exercise of the put option force Gretchen to participate in any oil or gas leases that it won through the bidding procedure. Petitioners therefore had a built in measure of security in their contractual arrangements with Gretchen in direct contrast to the situation in Larsen v. Commissioner,supra.
Petitioners also suggest that their investment in Gretchen's FOLAP is akin to a "straddle." We think the analogy to straddle situations inapposite. A straddle typically involves holding both "long" and "short" positions for the receipt and delivery of some property. The individual effecting the straddle will simultaneously (1) contract to accept delivery of a specified commodity *276 or property on a specified date, (the "long" position), and (2) contract to deliver the same or similar property on another date, (the "short" position). By obligating himself to both buy and sell a measure of security is achieved for the buyer/seller if a sudden change in market conditions dramatically affects the value of the commodity or property contracted for. In short, a true straddle reduces the risks of participating in a given transaction. It is apparent from the brief description above that a sinequa non of a straddle is multiple contracts for buying and selling a given commodity or property. Petitioners here have each entered into a single contractual arrangement with Gretchen providing for performance of services. The reality is that petitioners invested their money in Gretchen's FOLAP, not directly in oil and gas leases. There is no basis for finding that petitioners' investment in Gretchen should be accorded treatment that does not comport with reality. Petitioners' reliance on Smith v. Commissioner,78 T.C. 350 (1982), is misplaced. Rule 121 *277 provides that a party may move for summary judgment upon all or any part of the legal issues in controversy so long as there are no genuine issues of material fact. Rule 121(b) states that a decision shall be rendered "* * * if the pleadings, * * * and any other acceptable materials, * * * show that there is no genuine issue as any material fact and that a decision may be rendered as a matter of law. * * *." Applying these standards to the foregoing facts, and in light of our finding that this case is factually and legally indistinguishable from Nicolazzi v. Commissioner,supra, it is clear that respondent's motion must succeed. Accordingly, respondent's motion will be granted. An appropriate order will be issued.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Robert Amadori and Barbara Amadori, docket no. 7922-78 and Joseph A. Amadori and Beverly Amadori, docket no. 7986-78.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
4. With respect to Robert and Barbara Amadori, the agreements are signed, but undated.↩
5. Viewing the parties' memoranda in support of and in opposition to the summary judgment motions, there appears to be a factual dispute. However, at the hearing on this matter, respondent conceded to petitioners' version of the facts for purposes of this motion.↩
6. It is interesting to note that in both Nicolazzi v. Commissioner,79 T.C. 109 (1982), affd. 722 F.2d 324↩ (6th Cir. 1983), and the present case, Stewart Capital Corp. was employed as a contractor to the business with which the petitioners originally dealt.
7. A difference, we hasten to add, we noted in Nicolazzi v. Commissioner,supra↩ at 131, n. 11. 8. "Landmen" are individuals credited with extensive knowledge of oil and gas activities in a given area.↩