T.C. Summary Opinion 2016-80

UNITED STATES TAX COURT

JOHN J. EKEH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21806-12S.                    Filed December 12, 2016.

<u>Howard N. Kaplan</u>, for petitioner.

<u>Douglas S. Polsky</u> and <u>Dennis Richard Onnen</u>, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant

to section 7463(b),[1] the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 12, 2012, respondent determined deficiencies in petitioner's Federal income tax of $32,700 and $37,559 for 2008 and 2009, respectively. Respondent also determined section 6662(a) penalties of $6,540 and $7,511.80 for 2008 and 2009, respectively.

After concessions,[2] the issues for decision are whether petitioner is: (1) limited under the passive loss rules in section 469 as to whether he may deduct on his 2009 tax return certain expenses with respect to commercial real estate he owned and (2) liable for accuracy-related penalties under section 6662(a) for 2008 and 2009.[3]

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Petitioner conceded in full the $32,700 deficiency for 2008. For 2008 respondent determined that petitioner was not a real estate professional and was subject to the passive activity loss rules. However, the parties agreed that the adjusted gross income limitation under sec. 469(i) applied to 2008. As a result respondent determined petitioner had established that he sustained a deductible loss after the passive activity limitation of $7,325, which reduced petitioner's income for 2008. Petitioner also conceded certain adjustments to the Schedule C, Profit or Loss From Business, for his legal practice for 2009. See infra note 5.

[3]Adjustments for 2009 for self-employment tax, the self-employment tax
(continued...)

## Background

Some of the facts are stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, the second supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in Nebraska when he timely filed his petition.

Petitioner attended high school and some college courses in Nigeria. Petitioner and his brother immigrated to the United States after their parents died, and they remain a close-knit family. Petitioner completed a college degree from Creighton University in Nebraska and in 1992 graduated from Texas Southern University School of Law. Petitioner is a member of the Nebraska bar and practiced law in Nebraska for the years at issue.

I.     Petitioner's 2008 and 2009 Tax Returns

Petitioner prepared and timely filed his 2008 and 2009 Forms 1040, U.S. Individual Income Tax Return. For 2008 petitioner filed a Schedule C with respect to his legal practice and reported gross receipts of $332,073, expenses

---

[3](...continued)
deduction, and the making work pay credit are computational. They depend on the resolution of the two issues for 2009 and will not be discussed further.

totaling $224,429, and a net profit of $107,644.[4] For 2008 petitioner also filed a Schedule C reflecting a commercial real estate business operating as Margek Real Estate, LLC (Margek). Margek is a single-member LLC of which petitioner is the only member. On that Schedule C petitioner did not report any gross receipts but reported expenses totaling $59,872.

For 2009 petitioner filed a Schedule C with respect to his legal practice and reported gross receipts of $331,634, total expenses of $228,156, and a net profit of $103,478.[5] For 2009 petitioner also filed a Schedule C for Margek. On that Schedule C petitioner did not report any gross receipts but reported expenses totaling $55,582.

---

[4]For 2008 respondent disallowed the following expense deductions petitioner claimed with respect to his legal practice: other expenses ($35,506), meals and entertainment ($1,861), and travel ($430). Petitioner conceded these adjustments for his legal practice.

[5]For 2009 respondent determined the following expense deductions petitioner claimed with respect to his legal practice were disallowed: other expenses for a loan ($38,000), telephone ($1,136), meals and entertainment ($2,175), travel ($3,239), and office expenses ($7,439). Respondent also determined that petitioner did not include in the income of the legal practice taxable interest of $1,518. Petitioner conceded these adjustments for his legal practice.

II.    Notice of Deficiency

Respondent issued a notice of deficiency to petitioner for 2008 and 2009. For 2009, after concessions by the parties, see supra notes 2, 4, and 5, the following disallowed expense deductions with respect to petitioner's commercial rental real estate activity are at issue:  (1) $10,000 paid to a company for framing and drywall installation done on the commercial rental real estate, (2) mortgage interest of $27,209, (3) a brokerage fee of $13,000 paid with respect to finding a tenant for the commercial rental real estate, and (4) real estate taxes of $5,373. The parties stipulated that petitioner has substantiated the payment of the mortgage interest, brokerage fee, and real estate taxes.  Respondent conceded that petitioner has substantiated the payment of the $10,000 expense for the framing and drywall installation but disputes its deductibility.

III.    Petitioner's Legal Practice

During 2008 and 2009 petitioner operated a legal practice.  He has operated that business since passing the bar.  Petitioner practiced in the area of personal injury law.  Petitioner's legal practice was contingent-fee based, and he did not record his time for billing purposes.  Petitioner was typically paid when a case settled.  The amount of time required until a case would settle varied.  Sometimes the case could take three months to settle and sometimes it could take four years.

When a new client came into the office, petitioner would meet with the client and after that his assistant did most of the "footwork". Petitioner would negotiate with insurance companies in most of his cases. These negotiations might not be done in his office, with some of the negotiations being done over the phone or while he was in his car.

During 2009 petitioner deposited $59,000 into the operating account for his legal practice. That amount represented attorney's fees from a contingent-fee arrangement in a case he had handled over several previous years.

IV.    Petitioner's Commercial Rental Real Estate

In 2006 petitioner, through Margek, purchased one unit on the second floor of a three-story office building in Omaha, Nebraska (unit). The unit was a condominium, and petitioner was required to pay condominium fees. Before petitioner purchased the unit, he shared his intention to purchase it with his brother, and they toured the unit together. The unit was unfinished open space, and at the time petitioner purchased the unit it did not have any walls or ceilings.

On May 30, 2007, petitioner entered into a Uniform Commercial Listing Contract for Lease (listing contract) with respect to the unit with a real estate broker. By the terms of the listing contract, petitioner contracted with the real estate broker to list the unit and offer it for sale or lease through November 30,

2007.  The listing contract terminated without the unit's being sold or rented.

Although petitioner subsequently tried to market the unit on his own, he was not able to rent or sell the unit.

By the end of 2008 petitioner had not yet rented or sold the unit, but continued to make loan payments and pay condominium fees.[6]  Because of his cashflow concerns, in 2008 petitioner decided to hire a friend's company, Carovic Logistics (Logistics), to finish the interior of the unit by doing framing and installing drywall.  Logistics used a crew of three to four people to perform the work.  The work did not start until January 2009.  Petitioner paid Logistics $10,000 for this work in February 2009.  The framing and drywall installation (buildout) took from January through sometime in March 2009 to complete.

Sometime in 2009 a potential tenant, John Hancock Insurance Co. (John Hancock), was introduced to petitioner by the real estate broker who had had the previous listing contract.  John Hancock submitted a request for proposal to the real estate broker on July 7, 2009.[7]  On November 16, 2009, petitioner entered into

---

[6]Petitioner conceded that during 2008 he was not a real estate professional as defined under sec. 469(c)(7).

[7]The term of the listing contract with the real estate broker was from May 25 through November 30, 2007.  The record does not indicate whether the listing contract was renewed, but the record does indicate that a brokerage fee was paid to

(continued...)

an office lease with John Hancock as tenant of the unit. The term of the John Hancock lease was from February 1, 2010, through March 31, 2015. The John Hancock lease required petitioner to make certain improvements to the unit.

To comply with the terms of the John Hancock lease, petitioner entered into a Construction Management Agreement dated October 16, 2009, with a construction company for improvements to the unit. Under this agreement the construction company was hired to construct certain improvements to the unit. Under the agreement the construction company was to do the following.

1. Estimate the cost of the construction, including costs of labor, materials, equipment, furnishings, fees, permits, surveys, and other costs.

2. Obtain and review bids and negotiate proposals with respect to the construction. (Petitioner was to approve all bids and make the final determination as to awards of any contracts.)

3. Review any construction contracts and make recommendations to petitioner.

---

[7](...continued)
the same real estate broker when John Hancock was secured as a tenant. Petitioner testified that the term of the contract was orally extended.

4.  Coordinate, sequence, and schedule all work required to be performed under the contracts for any construction work and the delivery of equipment and materials.

5.  Obtain necessary building and other permits for the project.

6.  Consult with petitioner with respect to the resolution of any design or other issues that adversely affect the constructibility of the unit.

7.  Develop and implement procedures for petitioner to review and process contractor's applications for progress and final payments.

8.  Review and consult with petitioner with respect to any change orders.

9.  Keep petitioner advised of the progress of the construction of the project. Essentially, the construction company acted as a general contractor.

A Certificate of Occupancy was issued with respect to the unit effective January 20, 2010.

Petitioner and Margek borrowed $143,047 from Mutual of Omaha Bank on November 4, 2009.  From the loan proceeds a broker's fee of $13,090[8] was paid to the real estate broker on November 4, 2009.  Petitioner and/or Margek paid $5,373

---

[8] Petitioner claimed a deduction of $13,000, not $13,090, with respect to this broker's fee.

in real estate taxes for the unit in 2009. Petitioner reported that expense on the Schedule C relating to Margek filed with petitioner's 2009 tax return.[9]

## Discussion

I.      Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Morever, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Petitioner has not argued that section 7491(a) applies, and therefore the burden of proof remains with him.

---

[9]Respondent conceded that if the Court determined that the Schedule C deduction for the real estate taxes of $5,373 was not allowed under the passive loss rules, it would be allowable as a deduction on Schedule A, Itemized Deductions, for 2009.

II.    Whether Petitioner Must Capitalize Certain Expenses With Respect to the Unit

Sections 162 and 212 generally permit a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business or for the production of income.  However, a current deduction may not be claimed if the expense is for a capital expenditure.  See sec. 263(a).  Capital expenditures include amounts paid for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.  INDOPCO, Inc. v. Commissioner, 503 U.S. at 83.

The capitalization rules of section 263(a) and the regulations thereunder do not treat an expense to repair property as a capital expenditure.  See Gibson & Assocs., Inc. v. Commissioner, 136 T.C. 195, 232 (2011).  A repair to property is not a capital expenditure because it does not increase the value or prolong the useful life of the property (or adapt the property for a different or new use.)  Id. at 232-233.  Whether an expense is for a permanent improvement or betterment or a repair is a factual determination that turns on a finding that the work did or did not prolong the life of the property, increase its value, or make it adaptable to a different use.  Id. at 233.

A.    The Buildout

The buildout created walls and ceilings.  The buildout was a permanent improvement or betterment to the unit and prolonged the life of the unit.  The buildout was a major change to the space, not a repair of the space.  The Court finds that petitioner paid $10,000 to his friend's company and that the expense was a capital expenditure.  Thus it is not deductible for the year it was paid and must be capitalized under section 263(a).

B.    The Broker's Fee

The costs of acquiring a lease, including a broker's fee, are capital expenditures.  Munger v. Commissioner, 14 T.C. 1236, 1238 (1950); sec. 1.263(a)-2(a), (f)(2)(ii)(I), (4), Example (1), Income Tax Regs.  Such costs are capitalized and amortized over the term of the lease.  Munger v. Commissioner, 14 T.C. at 1238; sec. 1.263(a)-2(a), (f)(2)(ii)(I), (4), Example (1), Income Tax Regs.; sec. 1.461-1(a)(1), Income Tax Regs.  The Court concludes that the broker's fee is not deductible for the year it was paid.  Rather it must be capitalized and amortized over the life of the John Hancock lease.  As discussed below the Court concludes that petitioner's rental real estate activity is subject to the passive activity loss rules.  Accordingly, the amortization of the broker's fee is subject to

the passive activity loss rules. The Court leaves the calculation of the application of these rules to the Rule 155 computations.

III. Whether Petitioner's Commercial Rental Real Estate Business Is a Passive Activity

Sections 162 and 212 generally permit a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business or for the production of income. In the case of an individual section 469 generally disallows any current deduction for a passive activity loss. Sec. 469(a)(1), (b). A passive activity loss is equal to the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1).[10] Generally, a passive activity is any trade or business in which the taxpayer does not materially participate. See sec. 469(a)(1), (c)(1).

A. Whether Petitioner Meets the Definition of a Real Estate Professional

Whether the remaining deductions petitioner claimed for 2009 (mortgage interest expense of $27,209 and real estate taxes of $5,373) are deductible without limitation under the passive activity loss rules depends on whether petitioner

_____

[10]The effect of the passive activity loss disallowance rule is that deductions related to passive activities are allowed against income from passive activities and the excess (i.e., the amount by which the deductions related to the passive activities exceed the income from passive activities) cannot be deducted from income from activities other than passive activities. See Krukowski v. Commissioner, 279 F.3d 547, 549 (7th Cir. 2002), aff'g 114 T.C. 366 (2000).

meets the definition of a real estate professional. The Court concludes that petitioner did not meet the definition of a real estate professional.[11] Rental activity (including commercial rental real estate activity) is passive unless the taxpayer qualifies as a real estate professional as defined in section 469(c)(7)(B). Sec. 469(c)(2). If a taxpayer meets that definition (sometimes that taxpayer is referred to as a real estate professional), then section 469(c)(2) does not apply and the taxpayer's rental real estate activity, if conducted as a trade or business or for the production of income, is not treated as a passive activity if the taxpayer materially participates in the activity. Sec. 469(c)(1); Fowler v. Commissioner, T.C. Memo. 2002-223, 2002 Tax Ct. Memo LEXIS 230, at *10-*11; sec. 1.469-9(e), Income Tax Regs.

The Court concludes that petitioner has not met the time requirements of section 469(c)(7)(B) and does not meet the threshold requirements of a real estate professional. Therefore the Court does not need to address the definition of "material participation" set forth in section 469(h).

Section 469(c)(7)(B) provides two tests that a taxpayer must satisfy to be described as a real estate professional. One requires that the taxpayer perform

---

[11]Respondent conceded that if the Court determined that petitioner did not meet the definition of a real estate professional, petitioner would be allowed to deduct the real estate taxes as a Schedule A deduction. See supra note 9.

more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(ii). The other requires that "more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates". Sec. 469(c)(7)(B)(i). On the basis of the record the Court concludes that petitioner's commercial rental real estate activity constituted a real property trade or business during 2009. See sec. 469(c)(7)(C). The Court also concludes that petitioner's legal practice was a trade or business for purposes of section 469(c)(7)(B)(ii). However, petitioner has failed to prove how much time he spent on either the commercial rental real estate activity or his legal practice. Consequently, petitioner has failed to sustain his burden to prove he meets the description of a real estate professional under section 469(c)(7)(B).

Petitioner testified that he did not keep track of the time he spent in his legal practice. Petitioner's legal practice generated $331,634 in gross receipts, so there is a presumption that petitioner performed some type of personal service in his legal practice. However, petitioner did not quantify how much time he spent in his legal practice. Consequently, without quantification of the hours he spent providing personal services in his legal practice, he cannot prove that one-half of

his personal services in his trades and businesses were performed in his commercial rental real estate activity.

Further, petitioner has not met his burden of proving that in 2009 he spent more than 750 hours performing services connected with his commercial rental real estate activity. A taxpayer may use any reasonable means to establish his hours of participation. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). "Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means." Id. Reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Id. The Court has held that the regulations "concerning the records to be maintained by taxpayers * * * by no means allow a postevent 'ballpark guesstimate'". Carlstedt v. Commissioner, T.C. Memo. 1997-331, 1997 WL 407788, at *8 (citing Speer v. Commissioner, T.C. Memo. 1996-323). A taxpayer's uncorroborated testimony need not be relied upon. Bailey v. Commissioner, T.C. Memo. 2001-296, 2001 Tax Ct. Memo LEXIS 332, at *16. The Court is not required to accept unverified testimony of taxpayers in the absence of adequate documentation. See, e.g., Lum

v. Commissioner, T.C. Memo. 2012-103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

Petitioner has conceded that he did not meet the definition of a real estate professional for 2008. He asserts that in 2009, however, things changed and he did meet the definition of a real estate professional for that year. Petitioner did not maintain any appointment books, calendars, or narrative summaries of the hours he spent in his commercial rental real estate activity. Petitioner's only proof of how much time he devoted to his commercial rental real estate business in 2009 was the vague and uncorroborated testimony of him and his brother. The Court concludes that petitioner's testimony is not credible.

At trial in 2015 petitioner testified that he estimated he spent 40 hours a week on the commercial rental real estate activity during the buildout of the unit from sometime in January to sometime in March 2009. With respect to petitioner's testimony, the Court finds it difficult to believe he accurately remembered the number of hours he spent on his commercial rental real estate activity.

Petitioner agreed that because of the passage of time, it was hard for him to remember details. When asked whether he was on the boards of two entities in 2009, he said he was. When asked whether the board meetings were every three

months or six months, he could not remember. He stated: "You're asking me things that are many years ago that I do not remember." There is nothing in petitioner's testimony to indicate that he had a better memory with respect to his commercial rental real estate activity than with respect to the board meetings he attended.

Petitioner also testified that he hired Logistics to do the buildout. Those services were performed by an independent contractor, not petitioner. Petitioner's brother testified that his friend's company, Logistics, used a crew of three to four people to perform the buildout. Petitioner testified that he paid Logistics $10,000 for that work and provided a bank statement and a copy of the front of a check as proof of such payment. With a crew of three to four other people working on the buildout, the Court finds it unlikely that petitioner would have spent 40 hours a week on the buildout.

Petitioner also testified that once John Hancock committed to being a tenant, he spent 30 hours a week on the unit. However, petitioner did not provide any time period for such services. Petitioner's brother did not testify as to how much time petitioner spent on the commercial rental real estate activity after John Hancock committed to being a tenant.

Petitioner testified that his work during this period involved reviewing the lease and learning about triple net leases. It is not clear whether such activity was connected to petitioner's practice as a lawyer or his work as the owner of the unit. The Court concludes that petitioner has not proven he did any work on the John Hancock request or lease in connection with his commercial rental real estate activity.

With respect to showing the property, petitioner testified that he hired a real estate broker to show the property. The record shows that petitioner paid this real estate broker a broker's fee of $13,090 when it found a tenant for the property. Again, that service was performed by an independent contractor, not petitioner. Petitioner testified that "I was showing it to friends, talking to people, telling people about the situation that I'm involved in. Some people came and looked at the property that personally that [sic] I brought in there." He also testified that he had flyers prepared and advertised the property on the Internet. However, petitioner did not testify or provide corroboration as to how many hours he spent showing the property or advertising it. He did not provide any receipt for the number of flyers he had made or records of where he distributed the flyers. He did not provide any calendar or listing of the times he showed the unit to potential tenants.

Petitioner also hired a construction company to construct the space once John Hancock determined it was interested in renting the unit. The construction company's role was that of a general contractor. Under the construction contract the construction company was responsible for construction or overseeing construction. Petitioner reserved the right to approve subcontractors and payments but did not reserve any specific participation in the construction.

Petitioner's brother testified that he estimated petitioner spent 20 to 22 hours a week during the buildout, one-half of the time petitioner testified he spent. The Court is not persuaded that petitioner's brother's testimony furnishes anything better than a postevent "ballpark guesstimate". Bailey v. Commissioner, T.C. Memo. 2001-296; Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578.

Even if the Court were to accept petitioner's and his brother's testimony as proof of the time spent on petitioner's commercial rental real estate activity for 2009, the amount of time is less than the required 750 hours. Using his brother's higher estimate (22 hours a week) and taking judicial notice of the number of full weeks in the period January 1 through March 31, 2009 (12 full weeks), the total time spent would be 264 hours. Petitioner puts weight on his brother's testimony

as a third party; but even if his brother's estimate of 22 hours per week was used for both construction periods, including November and December, the time would still be only 440 hours without any legal holiday adjustments. Petitioner has not met his burden of proving he spent more than 750 hours on his commercial rental real estate activity.

Therefore petitioner was not a real estate professional under section 469(c) for 2009; and unless relief provided under section 469(i) applies, the losses sustained for 2009 are passive activity losses, deductions for which are disallowed by section 469(a).

B.     Whether Petitioner's Rental Real Estate Business Qualifies for the Relief Provided by Section 469(i)

The second exception to the general rule that rental real estate activities are per se passive is found in section 469(i). Section 469(i) provides that a taxpayer who actively participates in rental real estate activities may deduct up to $25,000 per year for related passive activity losses. Sec. 469(i)(1) and (2). A taxpayer may satisfy the active participation requirement by participating in management decisions, such as approving new tenants, deciding rental terms, and arranging for services and repairs. Madler v. Commissioner, T.C. Memo. 1998-112.

The $25,000 amount begins to phase out when the taxpayer's adjusted gross income (AGI), determined without regard to any passive activity loss, exceeds $100,000 and is phased out entirely when the taxpayer's AGI reaches $150,000. Sec. 469(i)(3).

For 2008 respondent determined that petitioner met the requirements of section 469(i) and allowed a deduction for a portion of the loss petitioner reported on his 2008 tax return. However, with respect to 2009, after taking petitioner's concessions into account, respondent determined that petitioner's AGI was above $150,000. Accordingly, even if petitioner were to prove that he actively participated with respect to the unit, any exception under section 469(i) is phased out. Therefore petitioner does not qualify for any relief under section 469(i) for 2009.

IV.  Accuracy-Related Penalties

After concessions, see supra note 2, respondent determined accuracy-related penalties for 2008 and 2009. Section 6662(a) and (b)(1) and (2) provides an accuracy-related penalty equal to 20% of the portion of an underpayment attributable to any substantial understatement of income tax or to negligence or disregard of rules or regulations.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet that burden the Commissioner must come forward with evidence indicating that it is appropriate to impose the penalty.  Id.  To meet that burden respondent must come forward with sufficient evidence showing that it is appropriate to impose the accuracy-related penalty.  See id.  As explained below the Court concludes that respondent has met his burden of production, with respect to negligence or disregard of rules or regulations under section 6662(a) and (b)(1), and with respect to a substantial understatement of income tax under section 6662(b)(2) if the Rule 155 computations so establish.

Although respondent bears the burden of production with respect to the accuracy-related penalty determined for each of petitioner's taxable years, respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions * * * [because petitioner] bears the burden of proof with regard to those issues."  Higbee v. Commissioner, 116 T.C. at 446.

A.     Substantial Understatement

Each party made concessions before trial, and the Court has sustained items in the notice of deficiency that were not conceded.[12]  The Court finds that in the event the computations under Rule 155 establish that there is a substantial understatement of income tax for either year, as a result of the Court's holding and the parties' concessions, that is greater than the greater of 10% of the tax required to be shown in petitioner's return or $5,000, see sec. 6662(d)(1)(A), then petitioner has substantially understated his income tax and is liable for a penalty under section 6662(a).

B.     Negligence or Disregard of Rules or Regulations

The accuracy-related penalty may also be imposed under section 6662(a) because of negligence or disregard of rules or regulations.  Sec. 6662(b)(1). If the computations under Rule 155 do not establish a substantial understatement of income tax for either year, petitioner is liable for the accuracy-related penalty because he was negligent and acted in careless disregard of rules or regulations.

---

[12]For both 2008 and 2009 the instructions for Schedule C specifically reference the number of hours required to be considered materially participating in an activity and special rules applicable to rental real estate activity.  The instructions also indicate that a taxpayer can deduct only 50% of meals and entertainment expenses.

"Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code or to exercise ordinary and reasonable care in the preparation of a tax return.  Sec. 6662(c); Higbee v. Commissioner, 116 T.C. at 448; sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is strongly indicated where a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a return that would seem to a reasonable person to be exceptionally beneficial under the circumstances.  See sec. 1.6662-3(b)(1), Income Tax Regs.  Petitioner has not provided any evidence, including credible testimony, that he made a reasonable attempt to ascertain the correctness of the expenses he reported with respect to his legal business or the expenses he reported with respect to his real estate activity. A reasonable person would have expected that not reporting any gross receipts but claiming deductions with respect to the real estate activity, thereby generating a large loss, was exceptionally beneficial.

For purposes of section 6662(a), disregard includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); Higbee v. Commissioner, 116 T.C. at 448.  A disregard of rules or regulations is careless if the taxpayer does not "exercise reasonable diligence to determine the correctness of a return position".  Sec. 1.6662-3(b)(2), Income Tax Regs.  A disregard of rules

or regulations is reckless if the taxpayer "makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Id.

Petitioner's disregard of rules or regulations was at least careless with respect to his tax returns for both 2008 and 2009. With respect to the deduction petitioner claimed for meals and entertainment for his legal practice, he testified that he claimed 100% of meals and entertainment expenses. For both 2008 and 2009 the Schedule C included a line item direction to "See Instructions". While petitioner could not remember whether he read the instructions to Schedule C, a reasonable person who prepares his own tax return would have seen that reference to the instructions on the form. The instructions for Schedule C for both years clearly state that "you can deduct only 50% of your business meal and entertainment expenses". Disregarding these instructions was careless.

Further, the instructions for Schedule C specify when certain costs connected to real property must be capitalized. As the Court concluded, two expenses connected with the unit (the buildout costs and the broker's fee) were subject to the capitalization rules. Petitioner's disregard of rules and regulations

was careless when he did not make any attempt to capitalize these costs but rather claimed current year deductions for both.

Further, petitioner's disregard of rules and regulations was careless when he failed to make any attempt to keep track of the time he spent on his commercial rental real estate activity, despite clear statements in the Schedule C instructions that taxpayers must meet certain hours requirements in order for activities not to be considered passive activities. Regardless of whether the section 469 requirements are complex, as petitioner asserts they are, a reasonable person would have realized that the statute requires proof of time spent and would have kept some type of record and made an effort to keep track of time spent.

C.    Reasonable Cause and Good Faith

A penalty will not be imposed under section 6662(a), however, if the taxpayer establishes that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. at 449. Relevant factors for the Court to consider include the knowledge and experience of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner did not hire a tax professional to advise him with respect to his 2008 and 2009 tax returns but prepared the returns himself. However, petitioner is a lawyer with advanced education. Petitioner has the skills to read a statute and regulations and understand whether they require recordkeeping. The instructions to Schedule C clearly state that only 50% of a business' meals and entertainment expenses are allowable as a deduction. Yet petitioner claimed deductions for 100% of the meals and entertainment expenses for his legal practice. Those instructions also indicate that a taxpayer must prove he spent a certain number of hours in a trade or business to avoid its being classified as a passive activity. Petitioner has failed to prove that he acted with reasonable cause and in good faith and is liable for an accuracy-related penalty for each year.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.